*E-Filed 05/03/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

REBECCA HOLLIDAY, et al.,

        Plaintiffs,

  v.

LIFESTYLE LIFT, INC., et al.,

        Defendants.

No. C 09-4995 RS

**ORDER RE: MOTION TO DISMISS**

I.     INTRODUCTION

Named plaintiff Rebecca Holliday brings this wage and hour suit on behalf of two putative classes. The Complaint names defendants Lifestyle Lift, Inc. (apparently a trade name used by Scientific Image Center Management or "SICM") and its corporate officers, David Kent and Gordon Quick.[1] The first proposed class is nationwide in scope and advances a claim for failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA"). The second is a California sub-class dependant on California state law which includes among other violations, a claim of failure to provide meal and rest periods. Defendants move to transfer the matter to the Eastern

---

[1] As defendants point out, "Lifestyle Lift" is not the true name of the defendant corporation. The correct name, they explain, is SICM. In order to proceed, Plaintiffs will need to amend the Complaint to reflect the defendant corporation's correct name.

1  District of Michigan pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss the individual
2  defendants for want of personal jurisdiction.  Holliday contends Kent and Quick created, controlled
3  and directed the employment policies that adversely affected the company's California employees.
4  Kent and Quick deny sufficient contact with California relating to the harm alleged to merit the
5  exercise of personal jurisdiction.  Pertinent facts bearing on the question of jurisdiction are in
6  dispute and, accordingly, the parties may engage in limited discovery on the specific question of
7  personal jurisdiction.  Because that issue may have an impact on the determination of whether or not
8  a transfer of venue to the Eastern District of Michigan is appropriate, that issue will remain under
9  submission pending the supplemental briefing contemplated by this Order.

## II.   RELEVANT FACTS

Holliday and all putative class members were employed by the defendant corporation, SICM, as "scheduling coordinators" or "schedulers" (the parties disagree as to which term is apt). According to the Complaint, schedulers are "people who work in the reception area of the Defendant's plastic surgery clinics coordinating appointments for the clinic's clients throughout California and the United States."  (Compl. ¶ 2.)  SICM employs "schedulers" at centers that perform facial plastic surgical procedures; SICM is also responsible for all "managerial" services for each center, including matters relating to human resources and payroll.  Apparently, these centers operate under the trade name "Lifestyle Lift."  SICM is a Michigan corporation and maintains its principal place of business in Troy, Michigan.  SICM asserts that its employment policies were formed at the Troy headquarters, as were its overtime policy, compensation levels and formulas.  In this district, SICM manages Lifestyle Lift centers in San Ramon and San Mateo.  Defendants acknowledge that each center employs at least one manager and one scheduler.

Kent is SICM's sole shareholder.  As defense counsel represented at oral argument, he owns all medical centers in the United States operating under the Lifestyle Lift trade name.  Kent claims to have visited California on only a single trip when he toured the San Mateo center.  The Complaint alleges Quick acts as SICM's chief executive officer.  He admits to having visited California on six occasions since May of 2008.  On each of those occasions, he acknowledges visiting the medical

No. C 09-4995 RS
Order Re: Motion to Dismiss

2

centers and their physicians. He also explains that he occasionally discusses SICM business by telephone with on-site managers in California.

### III. LEGAL STANDARD & DISCUSSION

When a non-resident defendant asserts a challenge to personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986). In the procedural context of a motion to dismiss based only on pleadings and affidavits, the plaintiff satisfies this burden by presenting a prima facie showing. *Metro. Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990). A court must construe all documents and evidence in the light most favorable to the plaintiff unless directly contradicted by defendant. *Id.* Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm jurisdictional statute is coexistensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are identical. *Toeppen*, 141 F.3d at 1320 (*citing* Cal. Civ. Proc. Code § 410.10).

A district court may exercise *in personam* jurisdiction over a non-resident defendant where that defendant has "minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977) (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be "present" therein for all purposes, only "specific" jurisdiction can be invoked. In contrast to "general" jurisdiction, specific jurisdiction is based on the relationship between the defendant's forum contacts and the plaintiff's claim. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). In this Circuit, the exercise of specific jurisdiction over a defendant is appropriate where his or her contacts with the forum satisfy the following three-prong test:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (*citing Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  The plaintiff bears the burden of proving the first two conditions.  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  Once the plaintiff carries this burden, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (*citing Schwarzenegger*, 374 F.3d at 802).

Subsumed within the phrase "purposeful availment" are two related but distinct concepts: availment and direction. *Schwarzenegger*, 374 F.3d at 802.  The threshold requirement may be satisfied by a demonstration of purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination. *Yahoo*, 433 F.3d at 1206.  The purposeful availment test is more often employed where a dispute sounds in contract; the purposeful direction analysis is used in suits sounding in tort. *Id.*

Here, the alleged FLSA violation is not easily categorized as either solely a contract or a tort dispute.  On one hand, a FLSA claim assumes the existence of an employment contract and courts have analogized violations under the statute to common law breach. *See, e.g.*, *Pavlo v. Stiefel Laboratories, Inc.*, No. 78, 1979 WL 105, at *6 (S.D.N.Y. Nov. 27, 1979) (noting that, while the FLSA does not have a common law antecedent, it is best understood as a statute that sounds in contract).  On the other, Holliday's contention that Kent and Quick orchestrated the disputed employment policy in some ways lends itself to intentional tort analysis.

A presentation of purposeful direction typically "consists of evidence of the defendant's actions outside the forum state that are directed at the forum . . . ." *Schwarzenegger*, 374 F.3d at 803 (*citing Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984)). *See also Yahoo*, 433 F.3d at 1205 (the purposeful direction inquiry "focuses on the forum in which the defendant's

actions were felt, whether or not the actions themselves occurred within the forum"). The "effects test" proceeds from the Supreme Court's articulation in *Calder v. Jones*, 465 U.S. 783 (1984). A plaintiff must allege that the defendant: (1) has committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *See Schwarzenegger*, 374 F.3d at 803.

In her Complaint, Holliday seeks to hold Kent and Quick individually liable as "employers" under the FLSA. Both Kent and Quick, Holliday contends, controlled or were at least involved in the creation of SICM's "uniform" corporate employment policy. More succinctly, she argues Kent and Quick made the policy decision to deny overtime compensation to all non-exempt schedulers in violation of section 207 of the Act. Presumably, the creation and implementation of this policy functions as the requisite "intentional act." Kent and Quick, however, deny not merely that such a policy existed, but also insist they have no contact or involvement with either the creation of such a policy or its enforcement in California.

At this stage, it appears that any reasoned conclusion on the question of whether it would be proper to subject Kent and Quick to this Court's jurisdiction will depend on a more fulsome factual presentation. Accordingly, the parties may undertake limited discovery on the question of specific jurisdiction. "[A] trial court does have jurisdiction to determine its own jurisdiction." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (*citing United States v. United Mine Workers*, 330 U.S. 258, 292 n.57 (1947)). "And it is clear that a court may allow discovery to aid in determining whether it has in personam or subject matter jurisdiction." *Id.* (citations omitted). At this time, the Court will refrain from setting specific limits on the types or numbers of discovery procedures authorized by this order, but the parties are cautioned that the discovery is to be narrowly focused and as limited as possible. No later than **June 24, 2010**, the parties shall file supplemental briefs (not to exceed ten pages each) along with any accompanying declarations they shall deem necessary, pertaining to the facts at issue relevant to the general and specific jurisdiction analyses outlined above. At that time, the matter will be deemed submitted

upon completion of the supplemental briefing.  The defendants' motion to transfer venue remains under submission.

IT IS SO ORDERED.

Dated: 05/03/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

No. C 09-4995 RS
ORDER RE: MOTION TO DISMISS