*E-Filed 10/6/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

REBECCA HOLLIDAY, et al.,

    Plaintiffs,

v.

LIFESTYLE LIFT, INC., et al.,

    Defendants.

No. C 09-4995 RS

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE AND MOTION TO DISMISS OR TRANSFER THIS ACTION FOR LACK OF PERSONAL JURISDICTION**

## I.  INTRODUCTION

Named plaintiff Rebecca Holliday brings this wage and hour suit on behalf of two putative classes against defendants Lifestyle Lift, Inc. and corporate officers, David Kent and Gordon Quick. The first refers to a nationwide Fair Labor Standards Act ("FLSA") class and advances a claim for failure to pay overtime compensation in violation of 29 U.S.C. § 207; the second is a California sub-class that relies only on state law alleging failures to provide meal and rest periods. Defendants move to dismiss the individual defendants for want of personal jurisdiction, or, in the alternative, to transfer the matter to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). As a threshold matter, plaintiff has presented a prima facie showing of the Court's personal jurisdiction over Kent and Quick. Moreover, considerations of convenience, fairness and judicial economy do

not warrant transfer. The defendants' motion to dismiss or for transfer pursuant to section 1404 must therefore be denied.

## II.   FACTUAL BACKGROUND

Holliday and all putative class members were employed by the defendant corporation as "scheduling coordinators." According to the Complaint, scheduling coordinators (also dubbed simply "schedulers") are "people who work in the reception area of the [d]efendant's plastic surgery clinics coordinating appointments for the clinic's clients throughout California and the United States." Compl. ¶ 2. As defendants point out, "Lifestyle Lift" is not the true name of the defendant corporation.[1] The correct name, they explain, is Scientific Image Center Management ("SICM"). SICM is a Michigan corporation and maintains its principle place of business in Troy, Michigan. SICM employs "schedulers" at centers that perform facial plastic surgical procedures. Apparently, these centers operate under the trade name "Lifestyle Lift." Defendants explain that SICM's employment policies were formed at the Troy headquarters, as were its overtime policy and compensation formulas. The corporation stores hard copies of its time sheets, personnel files, offer of employment letters, and pay stubs in Troy. Apparently, all schedulers log their time sheets electronically onto a network controlled by a server in Troy.

SICM operates thirty-two cosmetic clinics in nineteen states. One of these clinics is located in Troy. Twenty are scattered between the eastern seaboard and central Texas. Twelve are found in the western United States. In this district, SICM operates Lifestyle Lift centers in San Ramon and in

---

[1] Defendants insist plaintiffs' failure to refer to the corporate defendant under its true name essentially means SICM is no more than a third party to the suit. This is not so. Although plaintiffs should have listed SICM as a party in the caption pursuant to Federal Rule of Civil Procedure 10(a), their failure to do so does not mean the action may not be maintained against SICM. *See Yeseta v. Baima*, 837 F.2d 380, 382-83 (9th Cir. 1988). The body of the Complaint clearly focuses on the payroll and human resources policies of the corporation headquartered in Troy, Michigan. *See Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant.") (*citing Hoffman v. Halden*, 268 F.2d 280, 303-304 (9th Cir. 1959)). The Complaint focuses solely on the corporation's overarching employment policies and does not single out the individual practices of any remote center. Moreover, SICM's chief executive officer (Quick) and sole shareholder (Kent) were included in the caption and adequately served. Defendants even explain that they attempted to contact plaintiffs' attorney by telephone to suggest the name correction. Carp Decl. ¶ 2. SICM, therefore, was clearly notified of the subject suit. Moreover, it is not entirely accurate to contend that plaintiffs named the "wrong" defendant, as all SICM centers operate under the name "Lifestyle Lift." Nonetheless, plaintiff should take all appropriate steps to make the adjustment.

San Mateo.  Defendants explain that each center employs at least one manager and one scheduler. Accordingly, they contend that at least seventy-five putative class members reside somewhere between Texas and the East Coast.  In contrast, thirty-eight putative class members live between Colorado and the Pacific Ocean.  As plaintiff reminds the Court, under the FLSA, members of a "collective action" must first "opt in" to the litigation.  At this stage, therefore, the only identified class members live in California.

### III.  DISCUSSION

#### A.  Personal Jurisdiction

In her Complaint, Holliday seeks to hold the individual defendants liable under the FLSA. An individual may be held personally liable under the FLSA if he or she qualifies as an "employer" under the Act.[2]  Even if the individuals fit the definition of "employer" under the FLSA, the plaintiff must first establish the separate question of personal jurisdiction.  *See American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 590 (9th Cir. 1996) (stating that "liability [under a federal statute] is not to be conflated with amenability to suit in a particular forum").

Quick and Kent challenge this Court's personal jurisdiction.  Both are residents of Michigan. When a non-resident defendant asserts a challenge to personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986).  In the procedural context of a motion to dismiss based only on pleadings and affidavits, the plaintiff satisfies this burden by presenting a prima facie showing. *Metro. Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990).  A court construes all documents and evidence in the light most favorable to the plaintiff unless directly contradicted by defendant.  *Id.*  Where, as here, there is no applicable federal statute governing personal jurisdiction,

---

[2] Under the FLSA, "employer" is defined as: "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C § 203(d).  Where the individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability.  *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (upholding finding of liability against chief operating officer and chief executive officer where officers had a "significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; [the power to] determin[e][ ] salaries;[and the responsibility to] maintain [ ] employment records.") (alterations in original; internal quotation marks omitted).  *See also Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 509 (9th Cir. 1993) (Fletcher, J., dissenting) ("There is no question that an individual can be personally liable as an employer under the FLSA.").

the district court applies the law of the state in which the district court sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are identical. *Toeppen*, 141 F.3d at 1320 (*citing* Cal. Civ. Proc. Code § 410.10).

A district court has personal jurisdiction over a non-resident defendant where that defendant has "minimum contacts" with the forum state, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977) (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be "present" in that forum for all purposes, a forum may exercise only "specific" jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). In this Circuit, the exercise of specific jurisdiction over a defendant has been deemed appropriate where his or her contacts with the forum satisfy a three-prong test:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (*citing Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of proving the first two conditions. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Once the plaintiff carries this burden, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (*citing Schwarzenegger*, 374 F.3d at 802).

The parties agree that Kent has visited the San Mateo medical center in California. While Kent agrees he is SICM's sole shareholder, he denies involvement in the day-to-day business

operations of individual centers. As for Quick, he admits he has visited California on six occasions since May of 2008. On each occasion, he explains he visited the medical centers and their physicians. He also explains that he occasionally discusses SICM business by telephone with on-site managers in California. Again, while both parties have had some interaction with the forum state, neither party's contacts constitute substantial or continuous and systematic connections. The appropriate inquiry, then, focuses on whether Kent and Quick are subject to specific jurisdiction.[3]

1. Purposeful Availment In the Forum In Relation to Plaintiff's Claim

Subsumed within the phrase "purposeful availment" are two related but distinct concepts: purposeful *availment* and *direction*. *Schwarzenegger*, 374 F.3d at 802. The threshold requirement may be satisfied by a demonstration of purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination. *Yahoo*, 433 F.3d at 1206. The purposeful availment test is more often employed where a dispute sounds in contract; the purposeful direction analysis is used in suits sounding in tort. *Id.* (citations omitted).

Here, the alleged FLSA violation is not easily categorized as either a contract or a tort dispute. On one hand, a FLSA claim assumes the existence of an employment contract and courts have analogized violations under the statute to common law contract breach. *See, e.g.*, *Pavlo v. Stiefel Laboratories, Inc.*, No. 78, 1979 WL 105, at *6 (S.D.N.Y. Nov. 27, 1979) (noting that, while the FLSA does not have a common law antecedent, it is best understood as a statute that sounds in contract). On the other, Holliday's contention that Kent and Quick masterminded the employment policy that denied overtime compensation to non-exempt employees in some ways lends itself to the intentional tort analysis, an approach consistent with that applied by the parties in connection with the pending motion.[4]

---

[3] Pursuant to this Court's May 3, 2010 Order, the parties conducted limited discovery on the question of specific jurisdiction, and submitted supplemental briefing on the issue. Defendants took the deposition of named plaintiff, Rebecca Holliday, on June 8, 2010.
[4] Even under the contract/availment test, Holliday has presented a prima facie case. In contract cases, the Ninth Circuit typically inquires whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummate[s][a] transaction" in the forum, focusing on activities such as delivering goods or executing a contract. *Yahoo*, 433 F.3d at 1206; *Schwarzenegger*, 374 F.3d at 802. SICM executed a contract of employment with Holliday. As CEO and owner, it seems reasonable to assume that Kent and Quick had the ultimate authority to execute these contracts. Moreover, plaintiff claims the officers controlled the overtime compensation policy, which effectively worked as a breach to this underlying contract.

NO. C 09-4995
ORDER DENYING DEFENDANTS' MOTIONS

5

A presentation of purposeful direction typically "consists of evidence of the defendant's actions outside the forum state that are directed at the forum . . . ." *Schwarzenegger*, 374 F.3d at 803 (*citing Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984)). *See also Yahoo*, 433 F.3d at 1205 (the purposeful direction inquiry "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum"). Under the "effects test" a plaintiff must allege that the defendant: (1) has committed an intentional act; (2) expressly aimed at the forum state; and (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *See also Schwarzenegger*, 374 F.3d at 803.

Both Kent and Quick, Holliday contends, controlled or were at least involved in the creation of SICM's "uniform" corporate employment policy. More succinctly, she argues Kent and Quick made the policy decision to deny overtime compensation to all non-exempt schedulers in violation of section 207 of the Act. Under the *Calder* effects test, this policy decision operates as the "intentional act" contemplated in the section.[5]

As to express aiming and harmful effects in the forum, these requirements are easily satisfied. By operating medical centers in California and applying the allegedly unlawful employment practices here, defendants both targeted California and, as a consequence, could reasonably have suspected that California employees would be harmed by such conduct. Indeed, Holliday's deposition reveals that Kent signed some of her paychecks, which indicates a connection between Kent and California employees. In this sense, Holliday's claim is intimately related to the defendants' contacts with California.

2. Reasonableness

The exercise of personal jurisdiction must also be reasonable. The Ninth Circuit has articulated seven factors that are relevant to that determination: (1) the extent of the defendant's

---

[5] Defendants' reliance on the fiduciary shield doctrine is inapposite where plaintiff alleges that they both participated directly in the allegedly improper employment practices. *See*, *e.g.*, *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) ("Under the fiduciary shield doctrine a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person. However, the corporate form may be ignored in two cases: (1) where the corporation is the agent or alter ego of the individual defendant, or (2) by virtue of the individual's control of, and direct participation in the alleged activities.") (internal citations omitted).

No. C 09-4995
ORDER DENYING DEFENDANTS' MOTIONS
6

purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternate forum. *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1205 (C.D. Cal. 2000).

### i. Extent of Individual Defendants' Purposeful Injection

Although also relevant to the reasonableness inquiry, the extent of an individual defendant's purposeful injection into the forum state overlaps with the purposeful direction analysis deployed above. As noted there, both individual defendants have had numerous contacts with the forum state. These contacts include visits to the California medical centers and interviews with prospective staff in California. As Holliday's deposition suggests, the defendants' visits to California involved overseeing SICM business matters. Quick admits that he has spoken to California center managers on the telephone, and Holliday stated that she overheard multiple telephone calls between her onsite manager in California and SICM executives in Detroit. In light of their frequent contact and business obligations in California, Kent and Quick might reasonably have expected to answer allegations of improper employment practices in a California court.

### ii. Burden on the Defendants in Litigating in the Forum

"Where burdens are equal, this factor tips in favor of the defendants because the law of personal jurisdiction is 'primar[ily] concerned with the defendant's burden.'" *Ziegler v. Indian River County*, 64 F.3d 470, 475 (9th Cir. 1995) (*quoting Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995)). Here, the parties agree that it would be burdensome for Holliday to litigate the action in Michigan or for Kent and Quick to litigate in California. That said, Holliday's deposition reveals that both Kent and Quick have traveled to California in the past for SICM business. While this does not negate the fact that travel may indeed be costly and time consuming, it does suggest that, as between plaintiffs and defendants, the burden is not entirely equal. This factor, therefore, lends at least slight support for the exercise of personal jurisdiction.

### iii. Most Efficient Judicial Resolution of the Controversy

To evaluate this factor, courts look "primarily at where the witnesses and the evidence are likely to be located." *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1489 (9th Cir. 1993) (citation omitted). Plaintiff and her third-party witnesses are located in California. These witnesses are also California residents and, as plaintiff readily points out, live outside the subpoena powers of the Michigan forum defendants propose as a viable alternative. Defendants, their party witnesses, and the documentary evidence are all located in Michigan. As explained below, however, much if not all of this evidence is currently stored in electronic format. Transmission to the Northern District of California would not, therefore, seem to pose any great burden or inefficiency. This factor, therefore, favors the exercise of personal jurisdiction.

    iv. Other Factors

The remaining factors—the extent of conflict with the sovereignty of defendants' state, California's interest in adjudicating the dispute, importance of the forum to plaintiff's interest in convenient and effective relief, existence of an alternative forum—all reflect that the exercise of personal jurisdiction over this matter would be reasonable. No conflict arises with the sovereignty of Michigan if the Court were to exercise personal jurisdiction over Kent and Quick. Moreover, there is no question that California has an interest in adjudicating the instant dispute insofar as the alleged injuries occurred in this State and to a California resident. *See Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1075). Additionally, plaintiff points out that it would be far more convenient for her to litigate the instant action in California. That said, neither the Supreme Court nor the Ninth Circuit has given "much weight to the inconvenience to the plaintiff." *Ziegler*, 64 F.3d at 476 (citations omitted). This factor, then, is at best neutral. Finally, plaintiffs can obtain the same relief in Michigan as they may in this Court.

Taken together, the applicable factors demonstrate the exercise of personal jurisdiction over Kent and Quick is reasonable in light of the extent to which each defendant has injected himself into the forum. Accordingly, defendants' motion to dismiss or transfer this action for lack of personal jurisdiction is denied.

    B. Transfer Pursuant to Section 404(a)

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of the section is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted). Moreover, a district court has broad discretion when weighing a motion for transfer but must always make an individualized determination. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). The district court considers public factors which go to the interests of justice, and private factors, which speak to the convenience of the parties and witnesses. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

To support their motion for transfer, the defendants must demonstrate: (1) that the venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). If venue is proper in both districts, a district court evaluates several further (private and public) factors: (1) plaintiff's choice of forum; (2) convenience to the parties; (3) convenience to witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

The parties agree that venue would be proper in either this district or the Eastern District of Michigan. What the parties cannot agree upon is which venue would better serve the convenience of the parties and witnesses and otherwise serve the interests of justice. Upon examination of the factors outlined above, it is evident that, on balance, they do not favor transfer to Michigan.

1. <u>Private Factor: Plaintiff's Choice of Forum</u>

Ordinarily, a court treats a plaintiff's choice of forum with significant deference. *See, e.g.*, *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Defendants correctly point out that a class action suit with class members who hail from diverse locations often dilutes the rationale behind

that general rule. *See Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 525-26 (1947) ("[W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."); *Belzberg*, 834 F.2d at 739 ("[W]hen an individual . . . represents a class, the named plaintiff's choice of forum is given less weight."). As the Ninth Circuit explained in *Belzberg*:

> In judging the weight to be accorded [plaintiff's] choice of forum, consideration must be given to the extent of both [parties'] contacts with the forum, including those relating to [plaintiff's] cause of action. . . . If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration.

*Id.* Here, plaintiff does aver that the alleged violations against *her* occurred in this district at her work site in San Mateo. Moreover, the California subclass advances claims grounded upon California labor law. Accordingly, this case is not one where all operative facts occurred elsewhere or where the "forum has no interest in the parties or subject matter." The plaintiff's choice of forum, therefore, carries some weight. *See e.g.*, *Evancho v. Sanofi-Aventis U.S., Inc.*, No. 07-00098, 2007 U.S. Dist. LEXIS 35500, at *8 (N.D. Cal. May 3, 2007). This factor does not favor transfer.

2. Private Factor: Convenience of the Parties and Witnesses and Access to Evidence

The named plaintiff resides in this district; the defendant corporation, its corporate officers and their one named witness (head of human resources Barbara Zarankin) reside in the Eastern District of Michigan. Plaintiff suggests transfer, then, would merely shift the burden to the California parties and witnesses, not displace it.

Defendants point out, however, that plaintiffs' convenience analysis extends only to the named plaintiff. Holliday brings suit on behalf of a national class. Putative class members potentially hail from any of SICM's thirty-two centers in nineteen different states. Defendants explain that seventy-five putative class members reside between Texas and the east coast; only thirty-eight class members live in a state east of Colorado. In other words, because more putative class members actually reside in eastern states, transfer to Michigan might actually prove more

convenient for plaintiffs as well as for defendants. That said, no class has thus far been certified. Additionally, an employee must "opt in" to litigation under the FLSA. 29 U.S.C. § 216(b). No other SICM employee has done so. Moreover, the California subclass will almost certainly reside within this State. At least so far, Holliday is the only named plaintiff and it would be speculative for this Court to consider fairness and convenience to unnamed plaintiffs in as yet undetermined locations. While the Court entertains the possibility that class members might reside in districts closer to Michigan than to California, it is premature and misguided to ground a convenience decision on parties who may never need or wish to appear, or to assume the only "convenience" factor is distance.

As to non-party witnesses, plaintiff suggests she intends to call family members and friends who might testify as to her work schedule. Litigation in Michigan would obviously burden these witnesses. More importantly, they would be beyond the subpoena power of a Michigan court. Fed. R. Civ. Pro. 45(c)(3)(A)(ii) & (B)(iii). Defendants do not mention with any specificity any third party witness on whom they intend to rely.

Defendants also argue, contrary to plaintiffs' suggestion that this district houses most of the relevant evidence, that virtually all evidentiary documents are located at SICM headquarters in Troy. Employee timesheets reference break and meal times and overtime hours worked and are stored in Michigan, as are personnel files with records of employee complaints. Ms. Holliday aptly points to the possibility for electronic storage and transmittal of these documents. Defendants cite to analyses adopted by courts in this district for the proposition that, even in light of electronic storage and communication, "litigation costs are most effectively minimized where an action is venued in the district where most of the documentary evidence is found." *Foster v. Nationwide Mut. Ins. Co.*, No. 07-04928, 2007 U.S. Dist. LEXIS 95240, at *14-15 (N.D. Cal. Dec. 14, 2007). That said, other courts in this district have answered the same question differently. *See, e.g.*, *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007).

The reality of electronic communication and transmission at least dilutes the weight given to this convenience factor. Here, defendants explain that individual employees, like Holliday, log their time sheets and other employment information onto an electronic database controlled by a server in

Michigan. Technically, employees in California transmit information electronically to Troy where it is, thereafter, electronically "stored." The idea that it would be cumbersome or inefficient to transfer it back electronically to this district begins to approach absurd. This factor, then, is at most neutral.

Taken together, no convenience factor actually favors transfer to Michigan. It is of course clear that at least one plaintiff resides in the Northern District of California, as do her third party witnesses. Admittedly, defendants and a core group of party witnesses reside in the Eastern District of Michigan, Ms. Holliday's complaint hones in on SICM's "uniform" corporate policy to support the claims of her nationwide FLSA class and no party disputes that defendants made most, if not all, personnel and employment policy decisions at the Troy headquarters. Even so, the policy's effects were borne out in California. Accordingly, convenience to the parties and witnesses and deference to plaintiff's choice of forum disfavors transfer to the Eastern District of Michigan.

### 3. Public Factors: Familiarity of the Forum with Applicable Law

Plaintiff bases her Complaint on both federal and California statutory law. While this Court may be more familiar with California law than is the Eastern District of Michigan, "other federal courts are fully capable of applying California law." *Foster*, 2007 U.S. Dist. LEXIS 95240, at *15.

### 4. Remaining Factors

The remaining factors—feasibility of consolidation with other claims, local interest in the controversy and the relative cost of court congestion in each forum—are essentially neutral. The parties present no evidence of other claims to consolidate. As to local interest in the controversy, both California and Michigan have a strong interest in the controversy. Michigan has an interest insofar as SICM's corporate headquarters is located within that State. While the Complaint does not identify where Holliday worked or resides, her opposition motion maintains that she was employed at the San Mateo center. California, then, has an interest in protecting the rights of Holliday and any other members of the California subclass. As to court congestion, there appears to be no appreciable difference between the median times from filing to disposition or from filing to trial in each district. These factors, therefore, neither weigh for nor against transfer.

## IV. CONCLUSION

The totality of factors suggests this case should remain in this district. The first factor and third factors – plaintiff's forum choice and familiarity of the forum with applicable law – weigh against transfer. The second factor, itself a consolidation of party and witness convenience and access to evidence, weighs against transfer. While it is of course true that litigation and trial in California will burden the defendants, transfer would likely only displace this burden—or, worse, impose a headier one—onto plaintiff. The defendants' motion to transfer venue must therefore be denied. Additionally, the exercise of personal jurisdiction over Kent and Quick is proper, and defendants' motion to dismiss on that basis must also be denied.

A **Case Management Conference** shall be held on **January 6, 2011 at 10:00 a.m.** in Courtroom 3 on the 17th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California. The parties shall file a Joint Case Management Statement at least one week prior to the Conference.

IT IS SO ORDERED.

Dated: 10/6/10

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE